Rel: December 13, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

———————————————

### SC-2024-0205

———————————————

## Michael Johnson, in his official capacity as the Marshall County Revenue Commissioner

### v.

## Four-C Volunteer Fire Department and Georgia Mountain Volunteer Fire Department

### Appeal from Marshall Circuit Court
### (CV-21-900188)

MENDHEIM, Justice.

Michael Johnson, in his official capacity as the Revenue Commissioner for Marshall County ("the Revenue Commissioner"), appeals from a judgment entered by the Marshall Circuit Court following a bench trial that both granted declaratory relief and issued a writ of mandamus requested by the Four-C Volunteer Fire Department and the Georgia Mountain Volunteer Fire Department (collectively referred to as "the Fire Departments") concerning the correct interpretation and implementation of Act No. 2013-403, Ala. Acts 2013, codified at Ala. Code 1975, § 45-48-142.20 et seq. (Local Laws, Marshall County) ("the Act"). We affirm the trial court's judgment in part, reverse it in part, and remand the case with instructions.

## I. Facts

Richard Lawson is the chairman of the board of the Georgia Mountain Volunteer Fire Department ("Georgia Mountain"). At the bench trial, Lawson testified that Georgia Mountain became formally incorporated and approved as a volunteer fire district by the Marshall County Commission in January 2002. Lawson stated that he first began working for Georgia Mountain in 2005 as an administrator. He then went through training to become a firefighter, eventually working his way up

2

to being Georgia Mountain's fire chief. In 2015, when Lawson turned 70, he stepped away from service with Georgia Mountain. But in 2017, members of Georgia Mountain came to Lawson and asked him to return as an administrator, and so, in 2018, Lawson assumed the role of chairman of the board.

Lawson testified that Georgia Mountain's "primary source of income is the fire fee that came from Act 2013-403." Lawson explained that, in 2010, the Marshall County Association of Volunteer Fire Departments "determined … that we needed to increase the funding for the volunteer fire departments and rescue squads. We worked with the legislative office to develop a method of doing it, which was an act." The Act became law in 2013. Lawson testified that other counties' acts that had established fire-protection service fees to fund their volunteer fire departments were used as a framework for drafting the Act. In particular, the Act's drafters relied upon the acts for Limestone County, Act No. 2008-123, Ala. Acts 2008, and for Lawrence County, Act No. 92-409, Ala. Acts 1992.

The Act provided in part that "[t]he Marshall County Commission may establish one or more volunteer fire districts within the geographic

3

boundaries of the county." § 45-48-142.21, Ala. Code 1975. Further, it stated:

> "(b) Existing volunteer fire departments with their respective geographic service coverage area as defined by Marshall County E911 on May 22, 2013, may be established as a fire district pursuant to this subpart. … The requesting volunteer fire department shall submit a request to the Marshall County Association of Fire Departments and Rescue Squads (association) which shall review and verify the request information pursuant to the association's qualification plan and then submit a recommendation to the Marshall County Commission for the final decision of approval for a fire district."

§ 45-48-142.22(b), Ala. Code 1975. Several Marshall County volunteer fire departments, including Georgia Mountain and Four-C, petitioned the Marshall County Association of Fire Departments and Rescue Squads to be established as fire districts.[1] The petitions for the Fire Departments included maps detailing the boundaries of their proposed fire districts. The Marshall County Commission approved the fire districts.

Pursuant to the Act, qualified electors of those districts then filed petitions for a referendum; the Act provides that those petitions must be

> "signed by at least five percent of the qualified electors in the fire district who voted in the last general election, with the

_____

[1]Five Marshall County volunteer fire departments petitioned to be recognized as fire districts eligible to charge a fire-protection service fee: Georgia Mountain, Four-C, Hebron, Waterfront, and Swearengin.

office of the judge of probate who shall then order a referendum to be held in the fire district on the question of establishing a fire protection service fee for the fire district. …

"(b) The petition shall contain the name and description of the fire district area and shall request the judge of probate to call an election on the following question:

"'Do you favor the assessment of a fire service fee in the amount of $ ___ (dollars) a month for the purpose of funding fire protection services in this volunteer fire district? Yes ___ No ___'

"(c) The fee shall not exceed ten dollars ($10) a month."

§ 45-48-142.23, Ala. Code 1975. Lawson testified that the Fire Departments' petitions to then-Marshall County Probate Judge Tim Mitchell contained maps of the fire districts. However, when she testified at the trial, current Marshall County Probate Judge Andrea LeCroy brought with her the court file concerning those petitions. Judge LeCroy testified that the maps were not in the court file and that "[i]f the map was filed with the petition, it would be here [in the court file]." Judge Mitchell approved the petitions and ordered a referendum vote in the July 15, 2014, primary runoff election. A notice of the referendum that described each fire district by name and a sample ballot containing the question to be voted upon was published in a local newspaper for three weeks pursuant to § 45-48-142.27(d), Ala. Code 1975. All but one of the

referendums for the fire districts passed.[2] Lawson testified that, at the time of trial, nine fire districts in Marshall County assessed fire-protection service fees.

Shortly after the referendums' passage, the Revenue Commissioner sought a legal opinion from the Alabama Attorney General's office, asking: "Is the Marshall County Revenue Commissioner authorized to assess, bill, and collect the fire service fee established by Act 2013-403?" Ala. Op. Att'y Gen. No. 2015-028 (Jan. 20, 2015). The Attorney General answered in the affirmative, reasoning:

> "Act 2013-403 provides for a fire protection service fee on residences, dwellings, and businesses in Marshall County. 2013 Ala. Acts 2013-403. The act further provides that '[t]he fire protection service fee shall be collected, administered, and enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as are the ad valorem taxes of the state.' Id. at sec. 8 (emphasis added). In Marshall County, ad valorem taxes are collected by the Revenue Commissioner. 2000 Ala. Acts No. 2000-575, 1062.

> "In previous opinions, this Office has interpreted nearly identical language to require revenue commissioners of their respective counties to collect the fire protection fees authorized by local acts. Opinion to Honorable Fred Hamic, Geneva County Probate Judge, dated May 16, 2011, A.G. No. 2011-060; opinion to Honorable Starla S. Moss, Houston

---

[2]The referendum for Swearengin Volunteer Fire Department did not pass.

County Revenue Commissioner, dated October 31, 2001, A.G. No. 2002-046.

> "In each of those instances, the revenue commissioners were tasked with the duty of collecting <u>ad valorem</u> taxes. Hamic at 2; Moss at 2. Thus, because the Revenue Commissioner of Marshall County is authorized to assess <u>ad valorem</u> taxes, he or she is also obligated to assess, bill, and collect the fire protection service fee established by Act 2013-403."

<u>Id.</u> In reliance upon that Attorney General's opinion, the Revenue Commissioner assessed and collected the fire-protection service fee in the Marshall County fire districts where the referendums had been approved.

Lawson testified that, after he returned to work for Georgia Mountain in 2018, a "financial issue … required that we go back and audit all of our expenditures, our income, to find out what the source of the financial issue was." Lawson stated that he had noticed that the amounts being received from the fire-protection service fee "did not approach what we had projected the amounts to be before I departed the fire department in 2015." Lawson then met with the Revenue Commissioner to express his concerns, and Lawson and an administrator for Four-C began researching whether the Revenue Commissioner was assessing and collecting the fire-protection service fee correctly to various

entities. After meeting with the Revenue Commissioner several times, Lawson became convinced that the Revenue Commissioner was not assessing and collecting the fire-protection service fee in accordance with what he deemed the Act to require. In particular, Lawson did not believe that the Revenue Commissioner was assessing and collecting the fire-protection service fee from all the "dwellings" and "businesses" encompassed by the Act.

On July 6, 2021, the Fire Departments commenced an action against the Revenue Commissioner in his official capacity, seeking a declaratory judgment as to the interpretation of the Act and seeking a writ of mandamus requiring the Revenue Commissioner to assess and collect the fire-protection service fee in accordance with their proffered interpretation of the Act. On September 10, 2021, the Revenue Commissioner answered the complaint, asserting, among other defenses, that the Act violated various provisions of the Alabama Constitution. On February 8, 2023, the trial court granted a motion from the Fire Departments seeking to disallow the Revenue Commissioner's defenses challenging the constitutionality of the Act because the Revenue Commissioner had failed to serve the Alabama Attorney General in

8

accordance with § 6-6-227, Ala. Code 1975; however, the trial court gave the Revenue Commissioner 30 more days to properly serve the Attorney General. On the same date, the Revenue Commissioner filed an "Amended Notice to the Attorney General." Nothing in the record on appeal indicates that the Attorney General either entered an appearance or declined to participate in the action, and the Revenue Commissioner did not contend that the Act was constitutionally infirm in his subsequent filings to the trial court.

A bench trial was held on November 8 and 9, 2023. The trial court heard testimony from Lawson; the Revenue Commissioner; Judge LeCroy; James D. Hutcheson, the chairman of the Marshall County Commission; and Penni Windsor, the assessment and collections administrator for the Revenue Commissioner's office. Following the conclusion of the trial, both sides filed posttrial briefs and proposed orders with the trial court.

On November 29, 2023, the trial court entered its "Final Order," granting declaratory relief in favor of the Fire Departments with respect to certain interpretations of the Act and issuing a writ of mandamus to the extent that the Revenue Commissioner was acting inconsistent with

9

the trial court's declared interpretation of the Act. We will detail the portions of the trial court's judgment that are pertinent to this appeal in Part III of this opinion.

On December 29, 2023, the Revenue Commissioner filed a postjudgment motion to alter, amend, or vacate the trial court's November 29, 2023, judgment. On January 24, 2024, the Fire Departments filed a response to the Revenue Commissioner's postjudgment motion. On January 24, 2023, the trial court held a hearing concerning the Revenue Commissioner's postjudgment motion.

On March 28, 2024, the Revenue Commissioner's postjudgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., because the trial court had not rendered a ruling on the motion within 90 days of the filing of the postjudgment motion. On March 29, 2024, the Revenue Commissioner filed his notice of appeal.

## II. Standard of Review

As we noted in the rendition of the facts, the Fire Departments sought a declaratory judgment with respect to the construction of the Act. Section 6-6-223, Ala. Code 1975, provides: "Any person … whose rights, status, or other legal relations are affected by a statute … may have

determined any question of construction or validity arising under the …

statute … and obtain a declaration of rights, status, or other legal

relations thereunder."

The Fire Departments also sought a writ of mandamus directed to

the Revenue Commissioner to the extent that his assessment and

collection of the fire-protection service fee did not comport with their

proffered interpretation of the Act. Section 6-6-640, Ala. Code 1975,

provides:

> "(a) All applications for mandamus, prohibition,
> certiorari, or other remedial writ of a supervisory nature shall
> be commenced by a petition, verified by affidavit, in which the
> facts shall be stated as briefly and succinctly as the case will
> admit of, and any defendant may answer as to all such
> matters as may be necessary to his defense; any of the
> pleadings in such proceedings may be amended as often as
> occasion may require to attain the ends of justice and by
> striking out parties and adding new parties; and upon the
> issues thus presented, the court shall award the relief, if any,
> to which the petitioner is entitled.
>
> "(b) In any such proceeding, the answer shall not be
> conclusive, but the truth or sufficiency thereof may be put in
> issue and controverted."

The Fire Departments contend that, with respect to the declaratory

judgment, the ore tenus standard of review applies, citing Alfa Mutual

Insurance Co. v. Small, 829 So. 2d 743, 745 (Ala. 2002), in which this

11

Court stated that "[o]ur review of a declaratory judgment is generally governed by the ore tenus standard of review." However, the Small Court also noted that "where there are no disputed facts …, no such presumption of correctness applies." Id. The only potentially relevant disputed issue of fact is whether the Fire Departments' petitions to the probate court seeking a referendum for approval of the fire-protection service fee contained maps of the fire districts. However, the trial court concluded that the Act did not require the submission of a map or formal legal description in order for a petition to be valid. Thus, the trial court did not settle that disputed fact. Moreover, for reasons we provide in Part III.B of this opinion, we do not consider that fact pertinent to the outcome in this case. Therefore, there are essentially no disputed issues of fact, and so the trial court's judgment is not entitled to a presumption of correctness. Moreover, the crux of this appeal is the interpretation of Act. "This court reviews de novo a trial court's interpretation of a statute, because only a question of law is presented." Scott Bridge Co. v. Wright, 883 So. 2d 1221, 1223 (Ala. 2003).

### III. Analysis

The Revenue Commissioner's arguments in his appeal challenge the trial court's interpretation of two terms in the Act: "dwelling" and "business." The Revenue Commissioner also challenges the trial court's conclusion that the Fire Departments' submission of petitions for a referendum were not defective even though they did not include a map or formal legal description of the fire districts. Finally, the Revenue Commissioner contends that the Act does not empower him to enforce delinquency on the fire-protection service fee by placing the subject property for sale to recover the delinquency. We will address those arguments in reverse order.

Before we specifically address the Revenue Commissioner's arguments, however, it is necessary to provide the statutory framework that undergirds the dispute between the parties. In the rendition of the facts, we already shared portions of two sections of the Act; one of those, § 45-48-142.23, is the foundation of the Revenue Commissioner's contention that the Fire Departments' petitions to the probate court asking for a referendum were defective. Two other sections are pivotal to the Revenue Commissioners' other arguments.

Section 45-48-142.24, Ala. Code 1975, provides:

"(a) If a majority of the votes cast at the election are affirmative votes, <u>the fire service fee on each residence, dwelling, and business within the geographic boundaries of the fire district</u> shall become effective on the first day of the next month following approval and shall be paid within one year following approval. <u>For the purpose of this subpart, a dwelling shall be defined as any building, structure, or other improvement to real property used or expected to be used as a dwelling or residence for one or more human beings, including specifically and without limiting the generality of the foregoing:</u>

"(1) <u>A building, structure, or improvement</u> assessed for purposes of state and county ad valorem taxation, as Class III single-family owner-occupied residential property.

"(2) <u>A duplex or an apartment building</u>.

"(3) <u>Any mobile home or house trailer</u>.

"(b) <u>A building, structure, or other improvement</u> shall be classified as a dwelling for the purposes of this subpart notwithstanding either of the following:

"(1) That it is wholly or partially vacant or uninhabited at any time during the year for which a fire protection service fee with respect thereto is or is to be levied.

"(2) That it is also used or expected to be used simultaneously for a purpose, whether or not commercial in nature, other than as a dwelling or residence.

"(c) <u>The fire protection service fee shall not be construed as a tax on property. The fees shall be levied for the purpose</u>

14

of funding fire protection services to dwellings and businesses under this subpart.

"(d) The fire protection fee for a district may not be increased for a period of five years after approval of the initial fire protection service fee. Any increase in the amount of the fee shall not be effective until after the approval at a referendum election held for the purpose of increasing the fee.

"(e) If a majority of the votes cast at the election are negative, another election for setting the amount of the fire protection fee shall not be held for two years from the time of the prior election."

(Emphasis added.)

Section 45-48-142.26(a), Ala. Code 1975, provides:

"(a) The fire protection service fee shall be collected, administered, and enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as are the ad valorem taxes of the state. In the case of mobile homes, the fee shall be collected, administered, and enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as the annual registration fee for manufactured homes provided in Section 40-12-255[, Ala. Code 1975]. The proceeds of the collected fees, minus an administration fee not to exceed five percent, shall be paid to the respective volunteer fire districts."

(Emphasis added.)

We also note, as the parties did at trial, that the Act is far from the only local act or local amendment to the Alabama Constitution that establishes fire-protection service fees or taxes specifically dedicated to

funding fire departments in various counties. Indeed, there are at least 32 other Alabama counties that have such provisions. See Ala. Code 1975, § 45-3-140 et seq. (Local Laws, Barbour County); Ala. Code 1975, § 45-5-141.20 (Local Laws, Blount County); Ala. Const. 2022, Local Provisions, § 12-11.00 (Choctaw County); Ala. Const. 2022, Local Provisions, § 15-11.00 (Cleburne County); Ala. Code 1975, § 45-16-140 et seq. (Local Laws, Coffee County); Ala. Code 1975, § 45-17-140 et seq. (Local Laws, Colbert County); Ala. Code 1975, § 45-19-141 et seq. (Local Laws, Coosa County); Ala. Code 1975, § 45-23-141 et seq. (Local Laws, Dale County); Ala. Const. 2022, Local Provisions, § 25-11.00 (DeKalb County); Ala. Code 1975, § 45-26-141 et seq. (Local Laws, Elmore County); Ala. Const. 2022, Local Provisions, § 28-11.00 (Etowah County); Ala. Const. 2022, Local Provisions, § 29-11.209 (Fayette County); Ala. Code 1975, § 45-30-140 et seq. (Local Laws, Franklin County); Ala. Code 1975, § 45-31-141 et seq. (Local Laws, Geneva County); Ala. Const. 2022, Local Provisions, § 34-11.00 (Henry County); Ala. Code 1975, § 45-35-140 et seq. (Local Laws, Houston County); Ala. Code 1975, § 45-36-140 et seq. (Local Laws, Jackson County); Ala. Code 1975, § 45-37-140 et seq. (Local Laws, Jefferson County); Ala. Code 1975, § 45-39-140 et seq. (Local Laws,

16

Lauderdale County); Ala. Code 1975, § 45-40-141 et seq. (Local Laws, Lawrence County); Ala. Code 1975, § 45-41-141 et seq. (Local Laws, Lee County); Ala. Code 1975, § 45-42-140 et seq. (Local Laws, Limestone County); Ala. Code 1975, § 45-44-141 et seq. (Local Laws, Macon County); Ala. Const. 2022, Local Provisions, § 47-11.20 (Marion County); Ala. Code 1975, § 45-49-142 et seq. (Local Laws, Mobile County); Ala. Const. 2022, Local Provisions, § 50-11.00 (Monroe County); Ala. Const. 2022, Local Provisions, § 51-11.01 (Montgomery County); Ala. Const. 2022, Local Provisions, § 54-11.00 (Pickens County); Ala. Const. 2022, Local Provisions, § 56-11.00 (Randolph County); Ala. Code 1975, § 45-57-140 et seq. (Local Laws, Russell County); Ala. Const. 2022, Local Provisions, § 59-11.20 (St. Clair County); and Ala. Const. 2022, Local Provisions, § 65-11.20 (Washington County).

Some of the language in portions of those other provisions is identical to the language in portions of the Act. For example, the definition of the term "dwelling" provided in subsections (a) and (b) of § 45-48-142.24 is identical or very similar to the definition of "dwelling" in provisions for the counties of Barbour, Coffee, Colbert, Coosa, Dale, Elmore, Franklin, Geneva, Houston, Lauderdale, Lawrence, Lee,

17

Limestone, Mobile, and Russell. However, in contrast to the Act, the provisions in about half of those same counties -- Coosa, Dale, Elmore, Geneva, Houston, Lawrence, Lee, Mobile, and Russell -- provide specific definitions of the term "business" or substitute that term for "commercial building" and provide a definition of that term. Several provisions for other counties do not employ the terms "dwelling," "business," or "commercial building" because the fire-protection service fees are couched as ad valorem taxes or as specific charges against property owners, regardless of the type of structure situated on the property in question. The counties with such provisions include: Choctaw, Cleburne, DeKalb, Fayette, Henry, Jackson, Jefferson, Macon, Marion, Monroe, Montgomery, Pickens, Randolph, St. Clair, and Washington.[3]

---

[3]The provision in Blount County, in pertinent part, states:

"[T]he mandatory annual dues authorized to be collected pursuant to this section shall be assessed on each <u>residence, business, or church</u> in the district. <u>Any dues that are delinquent shall constitute a lien on the property</u> and may be recorded in the office of the judge of probate of the county."

§ 45-5-141.20(v), Ala. Code 1975 (emphasis added). Thus, that provision lists specific structures, but the fire-protection service fee is expressly treated as a property tax that can create a lien on the property.

We have provided the foregoing survey of the specific and general legal landscape of fire-protection service fees in Alabama because, as all the parties acknowledge, this appeal presents a matter of first impression: the Act that imposes a fire-protection service fee for the benefit of volunteer fire districts in Marshall County has not been previously interpreted by our courts. See the Revenue Commissioner's brief, p. 25; the Fire Departments' brief, p. 1. Moreover, despite the plethora of similar legal provisions for other counties, there is a dearth of cases from our appellate courts interpreting any of those provisions.[4] Even so, the Act is much newer than many of the other legal provisions that address this subject for other counties. Indeed, it appears that the first such act establishing a fire-protection service fee was the one enacted for Jefferson County in 1966. See Ala. Code 1975, § 45-37-140 et seq. A few such provisions were enacted in the 1980s -- those for Jackson, Monroe, and Washington counties. Most such provisions were enacted in the 1990s, including those for Choctaw, Cleburne, Colbert, DeKalb,

_____

[4]A few cases discuss Jefferson County's provision that addresses fire districts, but because the language of that provision differs markedly from the language of the Act, those cases are only tangentially helpful to the core issues raised in this case.

19

Elmore, Henry, Lawrence, Montgomery, Pickens, Randolph, and St. Clair counties. Several more provisions were enacted in the current century before the Act, like those for Barbour, Blount, Coffee, Coosa, Dale, Geneva, Houston, Lauderdale, Lee, and Limestone counties. Finally, some provisions -- those for Fayette, Franklin, Macon, Marion, Mobile, and Russell counties -- were enacted after the Act. Keeping in mind other counties' provisions will help us with the tasks of interpretation presented by each of the Revenue Commissioner's appellate arguments. See, e.g., League of Women Voters v. Renfro, 292 Ala. 128, 131, 290 So. 2d 167, 169 (1974) ("Statutes are in pari materia where they deal with the same subject. … Where statutes are in pari materia they should be construed together to ascertain the meaning and intent of each."); Ex parte Johnson, 474 So. 2d 715, 717 (Ala. 1985) ("It is a fundamental principle of statutory construction that statutes covering the same or similar subject matter should be construed in pari materia."); United States v. Brune, 767 F.3d 1009, 1022 (10th Cir. 2014) (observing that "no statute is an island unto itself. We can look around to provide substance and context to a potentially unclear term.").

A. Does Delinquency on the Fire-Protection Service Fee Empower the Revenue Commissioner to Sell the Subject Owner's Property?

The Revenue Commissioner argues that he does not have "statutory authority to sell property unless it is for a tax delinquent. The fire fee, by definition, is not a tax. There is no lien created by the fire fee statute. Therefore, there is no mechanism of enforcement with the statute." Revenue Commissioner's brief, p. 53. In response, the Fire Departments contend that the Revenue Commissioner's position "is inconsistent with the language of the statute itself which specifically states that the Fee is to be collected and assessed in the same manner as ad valorem taxes." Fire Departments' brief, p. 43.

This dispute highlights a seeming contradiction in the language of the Act. Section 45-48-142.24(c) unequivocally states that "[t]he fire protection service fee shall not be construed as a tax on property." However, § 45-48-142.26(a) states that "[t]he fire protection service fee shall be collected, administered, and <u>enforced</u> as closely as possible at the same time, in the same manner, and under the same requirements and laws as are the ad valorem taxes of the state." (Emphasis added.) Thus, the fire-protection service fee is not a property tax, but apparently it is supposed to be enforced like a property tax.

21

The Fire Departments note that two Attorney General Opinions concluded that a fire-protection-service-fee delinquency could be enforced by placing the subject property for sale. In Attorney General Opinion No. 2008-137, in which the Attorney General answered questions about Limestone County's fire-protection-service-fee act, the Attorney General stated that "[p]ersons that own either dwellings or businesses that refuse to pay the fire protection fee may be subject to the listing of their property in a tax sale." Ala. Op. Att'y Gen. No. 2008-137 (Sept. 25, 2008). The Attorney General reasoned: "Because this fee is to be enforced in the same manner as ad valorem taxes, when someone refuses to pay the fire protection service fee, the property should be listed as delinquent and subject to sale. Ala. Code §§ 40-10-1 to 40-10-31 (2003)." Id. Like the Act, the Limestone County act states that "[t]he fees shall not be construed as a tax on property," § 45-42-140.02(c), Ala. Code 1975, but that "[t]he fire protection service fee shall be collected, administered, and enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as are the ad valorem taxes of the state." § 45-42-140.03, Ala. Code 1975. In Attorney General Opinion No. 2008-018, the Attorney General answered questions about Dale County's fire-

22

protection-service-fee act, and he concluded that "[t]he Dale County Revenue Commissioner is responsible for the collection of the fee with all powers and responsibilities for nonpayment as are now used for ad valorem tax collections," which "includes collection actions such as sale of the property, etc., for nonpayment." Ala. Op. Att'y Gen. No. 2008-018 (Dec. 4, 2007). Like the Act, the Dale County act states that "[t]he fee shall not be construed as a tax on property," § 45-23-141.02(e), Ala. Code 1975, but that "[t]he fire and emergency medical service fee shall be collected, administered, and enforced at the same manner, and under the same requirements and laws as are the ad valorem taxes of the state." § 45-23-141.04, Ala. Code 1975.

It is true, as the Fire Departments observe, that Attorney General opinions "can constitute persuasive authority." Alabama-Tennessee Nat. Gas Co. v. Southern Nat. Gas Co., 694 So. 2d 1344, 1346 (Ala. 1997). On other occasions, however, we have noted that "this Court is not bound by opinions of the attorney general," and, accordingly, sometimes we have chosen not to follow the reasoning given in such opinions. Water Works & Sewer Bd. of City of Prichard v. Board of Water & Sewer Comm'rs of City of Mobile, 141 So. 3d 958, 965 (Ala. 2013).

23

We believe that in the two aforementioned advisory opinions, the Attorney General did not grapple with the tension created by the proclamation in each of those fire-protection-service-fee acts that "[t]he fees shall not be construed as a tax on property."[5] In cases that have discussed fire-protection service fees, our courts have declared such fees to be special assessments rather than property taxes. In Dewberry Engraving Co. of Alabama v. North Shelby County Fire & Emergency Medical District, 519 So. 2d 490, 491-92 (Ala. 1987), which concerned Jefferson County's fire-protection service fee, this Court explained:

> "On appeal, the Industrial Board argues that, because it is exempt from all taxes in Alabama, Code of Alabama (1975), § 11-54-96, it is exempt from the charges of the Fire District, because, it argues, the charges are a tax. We do not agree. The case that is dispositive of this issue is Horgan v. Dauphin Island Water & Sewer Authority, 409 So. 2d 1359 (Ala. 1982), in which this Court chronicled the legal history of special assessments, stating that a special assessment levied against property that benefits from a public improvement is not a tax. With a special assessment, '[t]he owners do not, in fact, pay anything in excess of what they receive by reason of such assessment.' Horgan, at 1367, quoting Collins v. Hollis, 212 Ala. 294, 299, 102 So. 379, 384 (1924) (Gardner, J., dissenting). See Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187,

_____

[5]We note the incongruity of that failure in the analysis given that, in another portion of Attorney General Opinion No. 2008-137, the Attorney General expressly noted that "[t]he fire protection service fee is not a tax on property. 2008 Ala. Act No. 2008-123, § 3. These fees are collected for the purpose of funding fire protection services. Id."

24

43 L.Ed. 443 (1899). However, '[a] tax, it is said, is a contribution to the general fund, the amount of it is taken from the individual, and nothing which benefits him individually, as distinguished from the mass of citizens, is given in the place of it. He pays, and by the amount he pays is poorer than he was before.' Horgan, at 1366, quoting Collins v. Hollis, supra (Gardner, J., dissenting and quoting Mayor & Aldermen of Birmingham v. Klein, 89 Ala. 461, 466, 7 So. 386, 388 (1889)).

"The charges in question, like a special assessment, are made non-uniformly, depending upon the specific service and/or upon the classification of the property served. The owners are all located within a specifically defined geographical area, and they do not pay for anything in excess of the fire protection service they receive. Additionally, because of the service provided, the value of their property is increased and their insurance rates are lowered. As the Fire District argues, the appellants' contention that the Fire District charges constitute a tax collapses under the overwhelming weight of authority to the contrary, and consequently the Industrial Board is liable for payment of the fire protection fees."

(Emphasis added.) Relying on Dewberry, the Court of Civil Appeals reached the same conclusion about the emergency-services fee of Shelby County at issue in Holmes v. Concord Fire District, 625 So. 2d 811, 812-13 (Ala. Civ. App. 1993). Moreover, as we noted in our legal survey of the fire-protection-service-fee provisions for the various counties, some of them specifically state that the fees are taxes on property and that a delinquency in payment creates a lien on the property, but the Act

25

specifically states that the fee is not to be construed as a tax on property. See § 45-48-142.24(c).

Given the distinction drawn in our courts' cases between property taxes and special assessments and the difference in language of the fire-protection-service-fee provisions in some counties versus other counties, we do not believe that it may be assumed that a delinquency in payment of the Marshall County fire-protection service fee creates a tax lien on the subject property. However, we need not settle that issue in this case. First, Lawson stressed in his testimony that the Fire Departments were concerned about "the assessment issue of assessing each dwelling, residence, and business and the collection and distribution of the fees and the recordkeeping," not with how the Revenue Commissioner chooses to enforce delinquency of payment. Second, the trial court's November 29, 2023, judgment did not specifically direct or require the Revenue Commissioner to enforce the Act through tax sales of property; consequently, that issue is not ripe for decision despite the opposing positions taken by the parties in their briefs. See Ex parte Riley, 11 So. 3d 801, 806 (Ala. 2008) (observing that, "[i]n a legal context, '"[r]ipeness is defined as '[t]he circumstance existing when a case has reached, but

26

has not passed, the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made.'" Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So. 2d 344, 352 n.5 (Ala. 2008) (quoting Black's Law Dictionary 1353 (8th ed. 2004)).' Martin v. Battistella, 9 So. 3d 1235, 1240-41 (Ala. 2008). Courts generally restrain themselves from addressing cases that have not reached the point of ripeness. The United States Supreme Court has stated that the basic rationale of the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ....' Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).").

## B. Were the Petitions that Sought Referendums to Approve Fire-Protection Service Fees Defective Because They Did Not Include a Map or Formal Legal Description of the Fire Districts?

As we recounted in the rendition of the facts, once the Marshall County Commission approved the fire districts, qualified electors in some of those fire districts -- including those for Georgia Mountain and Four-C -- submitted to the Marshall Probate Court petitions for "establishing a fire protection service fee for [those] fire district[s]." § 45-48-142.23(a), Ala. Code 1975. That section of the Act goes on to state:

27

"(b) <u>The petition shall contain the name and description of the fire district area</u> and shall request the judge of probate to call an election on the following question:

"'Do you favor the assessment of a fire service fee in the amount of $ ___ (dollars) a month for the purpose of funding fire protection services in this volunteer fire district? Yes ___ No ___'"

§ 45-48-142.23(b) (emphasis added).

In its November 29, 2023, judgment, the trial court concluded that

§ 45-48-142.23(b)

"does not require the submission of a map or formal legal description. As [Judge LeCroy] testified, elections are commonly noticed and referred to by the districts (i.e., County Commissioners, State Representatives, etc.). As a result, the reference to the fire district, as was already established and on file with the 9-1-1 office and the Marshall County Commission, is sufficient description of the fire district area. The Court will also note the Marshall County Judge of Probate was tasked with the responsibility of determining the sufficiency of the petitions for a referendum. Probate Judge LeCroy testified specifically that, had the description been in some way lacking or insufficient, the previous probate judge, Judge Mitchell, would not have issued an order saying that it was and moving forward with the vote. Finding the petitions sufficient, [Judge Mitchell] issued an order of referendum for fire district fee dated June 11, 2014. Acting in such capacity, no one objected or otherwise sought an appeal from said order."

(Capitalization omitted.)

The Revenue Commissioner disagrees with the foregoing conclusion of the trial court, arguing:

> "The language in the statute is clear. The language in the statute states that a petition for referendum shall contain the name and description of the fire district. The statute uses the word 'shall.' The statute uses the 'and' connector to connect the name of the district and the description of the district."

Revenue Commissioner's brief, p. 56.

The Revenue Commissioner's reading of § 45-48-142.23(b) makes sense: it is difficult to comprehend why the Act would expressly state that a petition requires "the name <u>and</u> description of the fire district area" if the name of the fire district was sufficient shorthand for describing the district, as the trial court seemed to conclude. § 45-48-142.23(b) (emphasis added). Moreover, we note that the fire-protection-service-fee acts from the two counties Lawson testified the Act's drafters relied upon the most -- Lawrence and Limestone counties -- do not contain provisions for submitting petitions for approval of the fire-protection service fees. See Ala. Code 1975, § 45-40-141 et seq. and § 45-42-140 et seq. In contrast, in the fire-protection-service-fee acts for other counties that do contain provisions for submitting petitions for approval of the fire-protection service fees, the acts require that the petition contain a

description of the fire district. For example, Blount County's act provides that "[t]he petition shall contain <u>an accurate legal description</u> of the proposed area and shall state the name of the proposed district." § 45-5-141.20(c), Ala. Code 1975 (emphasis added). Elmore County's act provides that "[t]he petition shall contain the description of the area proposed to be established as a district [and] shall state the name of the proposed district." § 45-26-142.03(e), Ala. Code 1975. Franklin County's act provides that "[t]he petition shall contain the name and description of the fire district area." § 45-30-140.04(b), Ala. Code 1975. Geneva County's act provides that "[t]he petition shall contain a map and description of the area which is proposed to be established as a district under this article" and that "[t]he petition shall state the name of the proposed district." § 45-31-141.03(b) and (c), Ala. Code 1975. Mobile County's act provides that "[t]he petition shall contain a description of the area proposed to be established as a district" and that "[t]he petition shall state the name of the proposed district." § 45-49-140.02(c) and (d), Ala. Code 1975. Thus, given the specific language in the Act, as well as the language in acts for other counties that require the submission of petitions, it appears that the submitted petitions were supposed to

30

contain a legal description and/or a map of the fire districts in addition to the names of the districts.

However, in <u>Parker v. Mount Olive Fire & Rescue District</u>, 420 So. 2d 31 (Ala. 1982), qualified electors in the Mount Olive Fire District filed a postjudgment motion to alter, amend, or vacate a June 23, 1981, order of the Jefferson Probate Court that had declared the establishment of the Mount Olive Fire District based on the results of a June 16, 1981, election approving a fire-protection service fee in that district. See <u>Id.</u> at 32. The motion alleged that some persons who did not reside in the district had voted in the election and that other persons who were qualified electors had not been permitted to vote in the election. The probate court denied the postjudgment motion, and the plaintiff-electors appealed. The <u>Parker</u> Court affirmed the probate court's judgment, reasoning:

> "This argument overlooks the well-settled principle that '[e]lection contests are not of common law origin, but are creatures of statutes which prescribe the terms and conditions of their exercise.' <u>Cosby v. Moore</u>, 259 Ala. 41, 46, 65 So. 2d 178 (1953). 'Elections belong to the political branch of the government, and, in absence of special constitutional or statutory provisions, are beyond the control of judicial power.' <u>Longshore v. City of Homewood</u>, 277 Ala. 444, 446, 171 So. 2d 453 (1965) (quoting 29 C.J.S. <u>Elections</u> § 246). Statutes providing for election contests are to be strictly construed. <u>See</u>, e.g., the cases cited above and <u>Perloff v. Edington</u>, 293 Ala. 277, 302 So. 2d 92 (1974).

31

"The general law for election contests in this state is found at Code 1975, § 17-15-1[] et seq. These provisions, however, only relate to elections of persons to office. Section 17-15-1; <u>Wakefield v. Town of Carbon Hill</u>, 215 Ala. 22, 108 So. 855 (1926); <u>Leigh v. State</u>, 69 Ala. 261 (1881); <u>Clarke & Daviney v. Jack</u>, 60 Ala. 271 (1877). In <u>Longshore v. City of Homewood</u>, <u>supra</u>, this Court addressed a code section governing consolidation of municipalities by election of the voters of the municipality to be annexed. The section was silent as to election contests. The opinion distinguished similar code sections governing annexation of unincorporated territory, uniting contiguous municipalities, and excluding territory already included in a municipality, all by election of the affected voters. Each of these sections allowed contests of the election according to provisions in § 17-15-1[] et seq. In the absence of any reference to contest of the election provided in the section at issue, this Court held that the probate court had no jurisdiction to hear a contest of the election.

"As can be seen from the above discussion, the general laws of the state do not give appellants the right to contest the election and there are no provisions in Act 79, as amended, granting such a right. We must conclude, therefore, that the legislature has not granted the right to contest elections held under Act 79. We note that Act 79 does provide for a petition for an election to abolish the district, and this appears to be the remedy open to appellants. Regardless of the merits of appellants' allegations, we find that the probate court correctly denied their motion."

<u>Id.</u> at 33.

We find the reasoning in <u>Parker</u> persuasive in this case. The Act describes the requirements for holding a referendum election "on the question of establishing a fire protection service fee," but the Act does not

contain a provision for election contests. § 45-48-142.23(a). See also § 45-48-142.27, Ala. Code 1975 (detailing the procedures required for the referendum election). Moreover, like the Jefferson County act discussed in Parker, the Act mentions that Marshall County fire districts are capable of being abolished. See § 45-48-142.22(a), Ala. Code 1975 ("The Marshall County Commission shall request the Marshall County Association of Fire Departments and Rescue Squads to develop a plan that defines the requirements of a district, monitors its performance and adherence to requirements, and provides for dissolution of the volunteer fire district." (Emphasis added.)); § 45-48-142.28, Ala. Code 1975 ("Upon dissolution or abandonment of any eligible volunteer fire district, any remaining funds derived from this subpart or any assets purchased with the funds derived from this subpart, after all indebtedness has been satisfied, shall be transferred to the Marshall County Association of Fire Departments and Rescue Squads. The funds and assets shall be reallocated to remaining volunteer fire districts that provide fire protection services for the dissolved or abandoned area. In the event there are no remaining volunteer fire districts, the funds or assets shall be distributed to remaining volunteer fire departments in the county.

33

Upon dissolution or abandonment of the fire district, the collection of fire protection service fees shall cease unless a new district is formed within 30 days to replace the dissolved or abandoned district." (Emphasis added.)).

The Revenue Commissioner "asks this Court to reverse the trial court's Final Order with respect to its finding that no formal description was needed to satisfy the statute," but he offers no legal authority for being able to contest the elections that approved the fire-protection service fees. Revenue Commissioner's brief, pp. 59-60. Considering the Act as a whole, we must conclude that the Legislature did not provide for the right to contest elections held under the Act and that a party's remedy would be to follow whatever procedures have been developed for dissolution of the fire districts in question. See Parker, supra; see generally McRae v. Security Pac. Hous. Servs., Inc., 628 So. 2d 429, 432 (Ala. 1993) ("Under the rules of statutory construction, we must consider the statute as a whole and must construe the statute reasonably so as to harmonize the provisions of the statute."). In short, the Revenue Commissioner's attempt to invalidate the fire-protection service fee by

challenging the adequacy of the submitted petitions fails even though his observation about what a submitted petition requires is accurate.[6]

## C. Did the Trial Court Err by Applying the Broadest Definition of the Term "Business" to the Act?

Section 45-48-142.24(a) states that once a referendum to establish a fire-protection service fee is approved, a "fire service fee on each … business within the geographic boundaries of the fire district shall become effective." The Act does not provide a further express definition of the term "business."

The Revenue Commissioner argues that the term "business"

"mean[s] a business structure, and he had assessed the [fire-protection service] fee once against the structure. Given the language and format of the statute, this is a reasonable interpretation of the statute. A residence and a dwelling clearly refer to a structure. [The Revenue Commissioner]

---

[6]Even if the Revenue Commissioner could have challenged the referendum elections under the Act, we note that, as our rendition of the facts details, there was conflicting evidence presented at trial concerning whether maps of the fire districts were submitted with the petitions. Lawson repeatedly testified that maps of the fire districts were submitted with the petitions, while Judge LeCroy testified that the court files of the petitions did not contain maps and that, if maps had been submitted, they would be in the files. Moreover, the Revenue Commissioner has been assessing and collecting fire-protection service fees under the Act since 2014, and, at trial, the Revenue Commissioner did not dispute the boundaries of the fire districts' service areas. Thus, the Revenue Commissioner's questioning about the legal descriptions of the fire districts appears to be academic.

35

interpreted the word business to be a colloquialism for a non-residential type of structure."

Revenue Commissioner's brief, p. 36 (citations to the record omitted).

The trial court disagreed with the Revenue Commissioner's interpretation and application of the term "business," explaining:

"The Act does not provide an express definition of the term 'business' and the [Revenue Commissioner's] understanding or interpretation of a 'business' differs from the [Fire Departments'], and this Court['s]. Using the plain and ordinary meaning of the term, the Court would note that Ballentine's Law Dictionary defines the term 'business' as [']an establishment where trade or commerce is conducted.['] The natural, plain, ordinary and commonly used definitions of this term does not require the business (or business owner) to also own the real estate, nor does it require that there be an active workforce present at the property at all times. Considering the same, the Court expressly finds that the [fire-protection service] fee is to be assessed and collected against all businesses in the applicable Fire District regardless of whether it owns the real estate where the business is conducted and/or whether it has employees on site."

The Fire Departments, of course, agree with the interpretation of the Act enunciated by the trial court in its November 29, 2023, judgment.

In essence, the dispute boils down to whether the term "business" in the Act should be understood as encompassing any entity conducting trade or commerce in Marshall County, as the trial court concluded, or whether the term "business" means a structure or building in which trade

36

or commerce is conducted. During cross-examination of the Revenue Commissioner at trial, the Fire Departments' counsel introduced the situation of a Dollar General store located in the Georgia Mountain service area. In addition to Dollar General's business being located within the store building, there is also a hearing-aid business in the same building. The Revenue Commissioner testified that Dollar General and the hearing-aid business are not charged separate fire-protection service fees; he assesses the fire-protection service fee only "on the structure itself." The Fire Departments contended, and the trial court agreed, that because § 45-48-142.24(a) states that a fire-protection fee should be assessed "on each … business," the Revenue Commissioner must assess a fire-protection service fee to Dollar General and to the hearing-aid business.[7]

The Revenue Commissioner contends that the trial court's interpretation of the Act "produces absurd results because it does not

---

[7]Lawson testified that he believed that the same principle would apply to "multiple businesses contained with[in] [a] plaza or shopping center": the Revenue Commissioner assesses one fire service-protection fee to the shopping center's owner, whereas, the Fire Departments argue -- and the trial court concluded -- that a fire-protection service fee should be assessed to each business entity that operates in the shopping center.

include a threshold for the level of commerce being conducted. This interpretation does not delineate between a retail store and a child's lemonade stand." Revenue Commissioner's brief, p. 23. The Fire Departments rejoin that they

> "have never suggested that this Act should apply to a lemonade stand or a Facebook sale meet-up. The Revenue Commissioner's argument is equally applicable to any law governing business, sales, or commerce and the laws or ordinances which require the issuance of a business license. Just because the business license requirements <u>could</u> be applied in an absurd manner does not invalidate the statutes that create them."

Fire Departments' brief, p. 32 (emphasis in original). But that argument appeals to the Revenue Commissioner's discretion in assessing the fire-protection service fee; it does not address the Revenue Commissioner's point that the trial court's interpretation of the term "business" in the Act <u>would</u> apply to any activity of trade or commerce within a subject fire district, including a child's lemonade stand. Moreover, given that the trial court issued a writ of mandamus directing the Revenue Commissioner to comply with "the terms and provisions stated" in the November 29, 2023, judgment, it does not appear that the Revenue Commissioner has discretion not to apply the trial court's definition of the term "business" in allegedly "absurd" contexts.

The Fire Departments seeks to support the trial court's interpretation by noting that § 45-48-142.26(a) states that "[t]he fire protection service fee shall be collected, administered, and enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as are the ad valorem taxes of the state" and that the Revenue Commissioner testified that he collects business personal-property ad valorem taxes on every business in the county, regardless of whether a business owns the property on which it is conducting its business. The Fire Departments assert that the manner in which the Revenue Commissioner assesses ad valorem taxes and the Act's requirement that the fire-protection service fee should be collected "as closely as possible" to ad valorem taxes demonstrates that the Revenue Commissioner must assess the fire-protection service fee to each business entity, not just each structure or building out of which business is conducted.

That argument is misguided, however, because Alabama's tax code does not define "business property." Instead, Alabama tax law simply

39

defines "real property"[8] and "personal property,"[9] and it classifies all taxable real and personal property into four classes that are subject to different rates of ad valorem taxation. See Ala. Const. 2022, Art. XI, § 217(a) and (b); § 40-8-1(a), Ala. Code 1975; Ex parte Emerald Mountain Expressway Bridge, L.L.C., 856 So. 2d 834, 839 (Ala. 2003) ("All real [and personal] property in this State is subject to ad valorem tax unless it is specifically exempt by a statute or a constitutional provision. § 40-11-1, Ala. Code 1975 (enumerating real [and personal] property as a subject of ad valorem taxation); § 40-9-1, Ala. Code 1975 (enumerating the property and persons that are exempt from ad valorem taxation)."). Thus, the Revenue Commissioner does not assess ad valorem taxes on personal property because the property is owned by a business; he collects ad valorem taxes from all owners of personal property, aside from property that is expressly exempted from taxation. Consequently, § 45-48-142.26(a)'s requirement that the fire-protection service fee must be

---

[8]"Real property" is defined as "[l]and and all things thereunto pertaining, all structures, and all things annexed or attached thereto which would pass to a vendee by the conveyance of the land or property." § 40-1-1(13), Ala. Code 1975.

[9]"Personal property" is defined as "[a]ll things other than real property." § 40-1-1(9), Ala. Code 1975.

40

collected "as closely as possible … as are … ad valorem taxes" does not dictate that the fire-protection service fee must be assessed to each business entity as opposed to each structure or building in which business is conducted.[10]

Having addressed the foregoing tangential arguments of the parties, it is incumbent upon us to evaluate the trial court's approach to interpreting the term "business." The trial court stated that it "use[d] the plain and ordinary meaning of the term," and, for garnering that meaning, the trial court looked to the definition provided in a particular legal dictionary. Admittedly, there is a certain appeal to the trial court's approach. We have repeatedly stated that

> "'"'[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"'"

---

[10]In any event, § 45-48-142.26(a) states that the fire-protection service fee "shall be collected, administered, and enforced as closely as possible … as are the ad valorem taxes of the state." (Emphasis added.) The specific statutory definition of the term "business" would take priority over § 45-48-142.26(a)'s guidance about the collection, administration, and enforcement of the fire-protection service fee if there was a conflict between the two.

Cleburne Cnty. Comm'n v. Norton, 979 So. 2d 766, 773 (Ala. 2007) (quoting Tolar Constr., LLC v. Kean Elec. Co., 944 So. 2d 138, 149 (Ala. 2006), quoting in turn Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So. 2d 293, 296 (Ala. 1998), quoting in turn IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)). Likewise, we also have stated that "this Court regularly looks to dictionary definitions to ascertain the plain meaning of words used in a statute." State v. City of Birmingham, 299 So. 3d 220, 226 (Ala. 2019).

But a closer examination of the issue reveals several problems with the trial court's interpretive approach. First, the term "business" is not defined in the Act. Although it is true that "when a term is not defined in a statute, the commonly accepted definition of the term should be applied," Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So. 2d 513, 517 (Ala. 2003), the term "business" is a general term with more than one commonly accepted meaning. The edition of Black's Law Dictionary that was in print at the time the Act became law offered several definitions of the term "business," including: "[a] commercial enterprise carried out for profit" and "a particular occupation or employment habitually engaged in for livelihood or gain"; "[c]ommercial

enterprises"; or "[c]ommercial transactions." Black's Law Dictionary, 226 (9th ed. 2009). It is possible the Act intended to convey one of those meanings or that a technical statutory meaning was intended. "An ambiguity exists where a term is reasonably subject to more than one interpretation." Cannon v. State Farm Mut. Auto. Ins. Co., 590 So. 2d 191, 194 (Ala. 1991). That ambiguity necessitates engagement with the rules of statutory construction. See, e.g., Ex parte Ankrom, 152 So. 3d 397, 410 (Ala. 2013) ("[O]nly when language in a statute is ambiguous will this Court engage in statutory construction."). The trial court did not employ rules of statutory construction to help define the term "business" in the Act.

Second, the trial court failed to follow "the plain and ordinary meaning" it offered from Ballentine's Law Dictionary. As background, it seems clear that the trial court lifted its definition of the term "business" from Attorney General Opinion No. 2008-137 that addressed questions concerning Limestone County's fire-protection-service-fee act. Limestone County's act states that "a fire protection service fee" is to be "levied on the owner of each dwelling and business in those portions of Limestone County located outside the corporate boundaries of any municipality

having a municipal fire department ...." § 45-42-140.02(a), Ala. Code 1975. Like the Act, Limestone County's act does not specifically define the term "business." The Limestone County Revenue Commissioner asked the Attorney General, among other questions: "Who or what would be considered a 'business' for the purpose of levying a fire protection service fee?" Ala. Op. Att'y Gen. No. 2008-137 (Sept. 25, 2008). The Attorney General answered:

> "Under the rules of statutory construction, when interpreting a statute, words will be given their 'natural, plain, ordinary, and commonly understood meaning. When a term is not defined in a statute, the commonly accepted definition of the term should be applied. Ex parte Gadsden Reg'l Med. Ctr., 904 So. 2d 234, 236 (Ala. 2004), quoting Bean Dredging, L.L.C. v. Ala. Dep't of Revenue, 855 So. 2d 513, 517 (Ala. 2003). Ballentine's Law Dictionary defines the term 'business' as an establishment where trade or commerce is conducted. Using this definition, a business establishment is a location where business is conducted; goods are made, stored, or processed; or where services are rendered. Ballentine's Law Dictionary 162 (3rd ed. 1969). Therefore, any building, structure, or other improvement to real property that is used or expected to be used as a business establishment that does not also meet the definition of a dwelling, as set out in section 3 of Act 2008-123, should be considered a 'business' for purposes of levying the fire protection service fee."

Id. (emphasis added).

44

The trial court's discussion concerning the meaning the of the term "business" in the Act tracks the Attorney General's answer in Opinion No. 2008-137 -- except for the last sentence of the Attorney General's answer. But that last sentence is pivotal because it shows that the Attorney General recognized that the dictionary definition stated that a "business" was "<u>an establishment</u> where trade or commerce is conducted," or, as the Attorney General's opinion further elaborated, "<u>a location</u> where business is conducted; goods are made, stored, or processed; or where services are rendered." <u>Id.</u> (emphasis added). In other words, the term "business" concerned a structure or building where commercial activity occurred. See, e.g., <u>A.H. Phillips, Inc. v. Walling</u>, 324 U.S. 490, 496 (1945) (observing that "the word 'establishment' … is normally used in business and in government … as meaning a distinct physical place of business" (footnote omitted)). The trial court ignored the word "establishment" in the <u>Ballentine's Law Dictionary</u> definition, and it ignored the Attorney General's conclusion that, for purposes of the Limestone County act, a "business" is "<u>any building, structure, or other improvement to real property</u> that is used or expected to be used <u>as a business establishment</u> that does not also meet the definition of a

45

dwelling." Ala. Op. Att'y Gen. No. 2008-137 (emphasis added). Instead, the trial court concluded that applying the dictionary definition meant that "the [fire-protection service] fee is to be assessed and collected against all businesses in the applicable Fire District ...." In short, the trial court's conclusion does not follow from the sources upon which it relied.

The last sentence in the analysis from Attorney General Opinion No. 2008-137 quoted above points to a third problem with the trial court's reasoning and conclusion. That opinion stated:

> "[A]ny building, structure, or other improvement to real property that is used or expected to be used as a business establishment that does not also meet the definition of a dwelling, as set out in section 3 of Act 2008-123, should be considered a 'business' for purposes of levying the fire protection service fee."

Ala. Op. Att'y Gen. No. 2008-137. In reaching that conclusion, the Attorney General incorporated part of the definition of the term "dwelling" in Limestone County's fire-protection-service-fee act into the definition of the term "business." Like the Act, Limestone County's act defines a "dwelling" in general as "any building, structure, or other improvement to real property used or expected to be used as a dwelling or residence for one or more human beings ...." § 45-42-140.02(b). Thus,

46

in ascertaining the definition of the term "business," the Attorney General used the first part of the definition of a "dwelling" -- "any building, structure, or other improvement to real property" -- and combined it with the idea that a "business" "is used or expected to be used as a business establishment."

In using the express definition of a "dwelling" to inform his derived definition of the term "business," the Attorney General merely relied upon the fact that the meaning of terms in a statute may be extracted from the context of other language in the statute. In other words, "[p]lain meaning draws on 'the specific context in which that language is used.'" Williams v. MTA Bus Co., 44 F.4th 115, 127 (2d Cir. 2022) (quoting United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016), quoting in turn Yates v. United States, 574 U.S. 528, 537 (2015) (plurality opinion)). See also Deal v. United States, 508 U.S. 129, 132 (1993) ("[T]he meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."); Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) ("[W]e construe language in its context and in light of the terms surrounding it."); Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by

reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). In other words, if the meaning of the term "business" is capable of being derived from the context of the other terms in the Act, that is the preferred meaning.

As the Revenue Commissioner observes, words naming various forms of structures are used repeatedly throughout the Act in describing what constitutes a "dwelling." A "dwelling" is described as "any building, structure, or other improvement to real property," "[a] building, structure, or improvement," "[a] duplex or apartment building," and "[a]ny mobile home or house trailer." § 45-48-142.24(a)(1)-(3) and (b). Moreover, the Act lists the terms "dwelling and "business" in a conjoined series, stating that "each residence, dwelling and business within the geographic boundaries of the fire district" is subject to the fire-protection service fee. § 45-48-142.24(a).

> "[The] 'qualification by associated words[]' [is] a principle which this court has embraced through application of the doctrine of 'noscitur a sociis' in construing statutory language. This doctrine holds that where general and specific words which are capable of an analogous meaning are associated one with the other, they take color from each other, so that the general words are restricted to a sense analogous to that of the less general."

48

Winner v. Marion Cnty. Comm'n, 415 So. 2d 1061, 1064 (Ala. 1982). See also Ex parte Cobb, 703 So. 2d 871, 876 (Ala. 1996) (explaining that, "[o]rdinarily, the coupling of words denotes an intention that they should be understood in the same general sense"). Because the term "dwelling" clearly refers to buildings and structures and the term "business" is listed along with the term "dwelling," it is reasonable to conclude that the term "business" in the Act is associated with buildings and structures.[11]

Such an interpretation also corresponds to the parties' agreement at trial that a fire-protection service fee is to be assessed to each apartment or duplex building, not to each individual unit in an apartment or duplex building. In their original complaint, the Fire Departments alleged that the Revenue Commissioner was failing in his duties to assess and collect the fire-protection service fee in part because "[t]here are also apartment and multiple family buildings within the fire districts for which the [Revenue Commissioner] is not assessing a fire protection fee for each and every dwelling within these multi-family

---

[11]Indeed, as both Lawson and Hutcheson testified, it is the owners of buildings in the fire districts that benefit from the existence of the volunteer fire departments by having lower insurance premiums and, of course, by gaining protection from destruction of their property by fire.

and/or use buildings." But during the course of litigation, the Fire Departments submitted in support of their case Attorney General Opinion No. 2008-018 (Dec. 4, 2007), which addressed questions concerning Dale County's fire-protection-service-fee act.[12] One question asked whether the fee is "assessed and separately collected against each apartment in a duplex or an apartment building or on the duplex and apartment building as a whole?" Ala. Op. Att'y Gen. No. 2008-018. The Attorney General noted that the Dale County act defined a "dwelling" in part as "'[a] duplex or an apartment building.'" Ala. Op. Att'y Gen. No. 2008-018 (emphasis in original) (quoting § 45-23-141.02(b)(2), Ala. Code 1975). The Attorney General's opinion concluded:

> "The wording of the act appears clear and unambiguous. [']Where the language of a statute is plain, [the] court must give effect to the clear meaning of that language.['] Perry v. City of Birmingham, 906 So. 2d 174[, 176] (Ala. 2005). Applying this rule of statutory construction, the act can only be construed to mean that the $30 fee is payable per duplex or apartment building and not per each individual unit of a duplex or apartment building."

---

[12]As this Court noted in Part III.A of this opinion, Attorney General Opinion No. 2008-018 had, among other things, advised that the Dale County Revenue Commissioner could enforce delinquency on fire-protection service fees by bringing "collection actions such as sale of the property, etc., for nonpayment."

Ala. Op. Att'y Gen. No. 2008-018. Based on that reasoning, the trial court's November 29, 2023, judgment noted that the parties had agreed that "the fee should be assessed against each building within an apartment complex. ... [T]his Court accepts and adopts that interpretation." The situation involving apartment buildings as "dwellings" is analogous to commercial buildings that house multiple business entities, and so it makes sense that the term "business," as used in the Act, refers to a building or structure rather than to individual business entities.

Finally, the Revenue Commissioner's interpretation of the term "business" in the Act is reflected in the fire-protection-service-fee provisions of other counties that expressly define the term "business" or substitute that term for the term "commercial building." Coosa County's fire-protection-service-fee act defines a "business" as "[a] commercial or industrial establishment such as a store or factory ...." § 45-19-141.02(3), Ala. Code 1975. Dale County's fire-protection-service-fee act levies the fee on "the owner of each dwelling and commercial building in Dale County, excluding the corporate limits of the City of Ozark," and it defines a "commercial building" generally as "any building, structure, or other

51

improvement to real property used or expected to be used for commercial or business purposes, including rental property." § 45-23-141.02 (a) and (d), Ala. Code 1975. The fire-protection-service-fee acts of Geneva, Houston, Mobile, and Russell counties are essentially identical to Dale County's act in their definitions of a "commercial building." See Ala. Code 1975, § 45-31-141.11(a) and (d); § 45-35-140.02(a) and (d); § 45-49-142.03 and § 45-49-142(1); and § 45-57-140.04 and § 45-57-140.02(1). Lee County's fire-protection-service-fee act authorizes the levy of a "financial charge with respect to each unit of property" located in a fire district, and it defines a "commercial building" broadly as "[a]ny building, structure, or other improvement to real property" but contains very specific exclusions to that definition. Ala. Code 1975, § 45-41-141.03 and § 45-41-141(a)(4). Thus, most of the county fire-protection-service-fee acts that expressly define a "business" or "commercial building" impose the fee on structures or buildings that contain business enterprises; they do not impose the fee on each business enterprise within a structure or building.

Just as telling are the fire-protection-service-fee acts for Lawrence and Elmore counties. Those acts also levy a fire-protection service fee on "each … commercial building," but they expressly address the situation

of separate businesses in one building. Ala. Code 1975, § 45-40-141.03 and § 45-26-141.03. Specifically, the Lawrence County act defines a "commercial building" as

> "[a]ny building that houses one or more separate business enterprise that are required by law to purchase and display a business license applicable to each business enterprise. In the case of a commercial building with more than one business located in the building, a separate fee shall be assessed on the building for each business located in the building."

§ 45-40-141.02(1). Lawrence County's act was enacted in 1992. Elmore County's act was enacted in 1995, and it has a nearly identical definition of the term "commercial building" as the Lawrence County act, except that it adds at the end of the definition that "in no case shall a fee be assessed more than one time on the same space." § 45-26-141.02(4). Thus, there are county fire-protection-service-fee acts that contemplate structures or buildings that contain multiple business entities, and those acts existed well before the Act, but the Legislature chose not to follow the language contained in the acts for Lawrence and Elmore counties in crafting the Act.

For all the foregoing reasons, we conclude, as the Attorney General did in opinion No. 2008-137 with respect to Limestone County's act, that the term "business" in the Act is defined as "any building, structure, or

other improvement to real property that is used or expected to be used as a business establishment that does not also meet the definition of a dwelling." Therefore, the Revenue Commissioner has not erred in assessing and collecting the fire-protection service fee on structures or buildings that contain businesses rather than assessing and collecting the fee on every business entity that operates in Marshall County at any time. In other words, the trial court's interpretation of the term "business" in its November 29, 2023, judgment is incorrect, and we reverse the trial court's judgment to the extent that it directed the Revenue Commissioner to change his current practice of assessing and collecting of the fire-protection service fee on business buildings and structures in Marshall County.

### D. Did the Trial Court Err by Expanding the Term "Dwelling" in the Act to Fifth Wheels, Travel Trailers, RVs, Campers, and Other Structures?

Section 45-48-142.24(a) states that once a referendum approving a fire-protection service fee is approved, a "fire service fee on each … dwelling … within the geographic boundaries of the fire district shall become effective."[13] However, unlike the term "business," the Act does

---

[13]We note that, although § 45-48-142.24(a) and (b) also use the term "residence," that term is not further defined or used elsewhere in the Act,

54

expressly define the term "dwelling." Section 45-48-142.24 defines the

term "dwelling" as follows:

> "For the purpose of this subpart, a dwelling shall be defined as <u>any building, structure, or other improvement to real property</u> used or expected to be used as a dwelling or residence for one or more human beings, including specifically and without limiting the generality of the foregoing:
>
>> "(1) <u>A building, structure, or improvement</u> assessed for purposes of state and county ad valorem taxation, as Class III single-family owner-occupied residential property.
>>
>> "(2) A duplex or an apartment <u>building</u>.
>>
>> "(3) <u>Any mobile home or house trailer</u>.

---

and neither the parties nor the trial court discussed the meaning of the term "residence." The use of the term "residence" in the Act suggests that it is synonymous with the term "dwelling" because it is used alongside that term each time it is mentioned in the Act, and twice the phrase "dwelling <u>or</u> residence" is used. (Emphasis added.)

> "'In its elementary sense the word "or" is a disjunctive particle that marks an alternative, generally corresponding to "either," as "either this or that;" a connective that marks an alternative. 29 Cyc. 1502. It often connects a series of words or propositions, presenting a choice of either. <u>Webster's New Int. Dict.</u> (1925 Ed.).'"

<u>Doss v. State</u>, 23 Ala. App. 168, 174, 123 So. 237, 242 (1929) (quoting <u>Pompano Horse Club v. State</u>, 93 Fla. 415, 425, 111 So. 801, 805 (1927)). Accordingly, our analysis will focus on the term "dwelling" as it is defined in the Act.

"(b) <u>A building, structure, or other improvement</u> shall be classified as a dwelling for the purposes of this subpart notwithstanding either of the following:

"(1) That it is wholly or partially vacant or uninhabited at any time during the year for which a fire protection service fee with respect thereto is or is to be levied.

"(2) That it is also used or expected to be used simultaneously for a purpose, whether or not commercial in nature, other than as a dwelling or residence.

"(c) The fire protection service fee shall not be construed as a tax on property. The fees shall be levied for the purpose of funding fire protection services <u>to dwellings</u> and businesses under this subpart."

§ 45-48-142.24(a) - (c) (emphasis added).

In the portion of its November 29, 2023, judgment that addressed the definition of the term "dwelling" in the Act, the trial court stated:

"[T]here is a disagreement concerning the assessment and collection of the [fire-protection service] fee as it relates to non-traditional dwellings and residences. The Marshall County Revenue Commissioner testified at the trial of this matter and in his deposition prior to trial that he only charges the [fire-protection service] fee against the mobile homes that are assessed as part of realty or those otherwise who voluntarily register. This interpretation is not supported by the Act."

The trial court then quoted the definition of the term "dwelling" provided in the Act and continued:

"This definition clearly places the emphasis not on some arbitrary type or title, but rather on the use or intended use of the structure -- whether or not persons are dwelling therein. The critical issue, then, is whether that structure, be it a trailer, RV, camper, tiny home, etc., is being used as a place where one or more persons dwell or reside. See Ala. Code [§] 45-48-142.24(a) and (b). <u>By the plain wording and meaning of the Act, the assessment of the [fire-protection service] fee is not limited to mobile homes and traditional housing structures. To the extent that any tiny home, fifth wheel, travel trailer, RV, camper or other structure is being used as a 'dwelling' as defined above, the Revenue Commissioner is to assess, collect and enforce the [fire-protection service] fee</u>."

(Emphasis added.)

The Revenue Commissioner disagrees with the trial court's interpretation, arguing:

"A close look at the exact language [of § 45-48-142.24] is important for this analysis. The statute says, 'Or other improvement to real property.' [The Revenue Commissioner] places a focus on the word, 'other.' Under this analysis of the plain language, the building or structure must be an improvement to the real property in order to qualify for the second part of the analysis dealing with intent. Under this reading, a building or improvement that did not qualify as an improvement to real property would not satisfy the test to determine if the building or structure was a dwelling.

"Once a building or structure qualifies as an improvement, then one may look to see what the intent of that improvement is. If a person intends to live in the improvement, then it would qualify as a 'dwelling' and be subject to the fire service fee. However, the trial court's order classifies objects as structures that cannot be classified as an improvement to realty.

> "The trial court's final order includes fifth wheel, travel trailer, RV, and campers in the list of structures that [the Revenue Commissioner] was ordered to assess a fire fee. [The Revenue Commissioner] testified that he knew of no way to affix a travel trailer to realty. The Code of Alabama defines these items in a different manner from traditional residences and manufactured homes. The Code of Alabama defines fifth wheel, travel trailer, RV's, and campers as 'Motor Vehicles' and 'Trailers.'"

Revenue Commissioner's brief, pp. 41-42 (citations to the record omitted).

In contrast, the Fire Departments' argument echoes the trial court's understanding of the term "dwelling":

> "The only definition that applies to determine which structures or buildings are assessed a fee is that contained within the Act itself. The definition of dwelling includes any and all structures which are intended to be or actually are being used as a residence or dwelling, not just those that fall within the statutory definition of manufactured or mobile homes."

Fire Departments' brief, p. 39.

We believe the Revenue Commissioner's understanding of the term "dwelling" reflects a more careful reading of the Act. Though the Fire Departments state that "[t]he only definition that applies … is that contained within the Act itself," their interpretation -- and that of the trial court -- favors a general application of ideas expressed in the Act rather than paying close attention to the language of the Act itself. Both

the trial court and the Fire Departments simply focus on what the "intended use" of a thing might be, i.e., whether it is intended to be used as living quarters. As the Revenue Commissioner notes, that emphasis ignores the first part of the definition of the term "dwelling." Section 45-48-142.24(a) of the Act begins by defining a "dwelling" as "any building, structure, or other improvement to real property"; the remaining portion of that general definition -- "used or expected to be used as a dwelling or residence for one or more human beings" -- serves to further qualify the definition, i.e., to distinguish a "dwelling" from a "business" "building, structure, or other improvement to real property," which was discussed in Part III.C of this opinion. Thus, before there is any consideration of the use or intended use of the thing that is potentially subject to the fire-protection service fee, that thing must be a "building, structure, or other improvement to real property." The trial court's interpretation reverses that order by essentially allowing the use or expected use of the thing to swallow the starting point of the definition.

The definition of a "dwelling" then goes on to provide specific examples that are declared to be "dwellings" while stating that the list does not "limit[] the generality of the foregoing," meaning that the list is

not exhaustive but that things not listed still must meet the general definition, i.e., they must still be "building[s], structure[s], or other improvement[s] to real property." Unsurprisingly, that list includes specific buildings and structures: single-family homes, duplexes, apartment buildings, mobile homes, and house trailers. The Act does not specifically list RVs, campers, fifth wheels, and travel trailers as "dwellings," nor would those qualify as "building[s]" or "structure[s]" by common understanding, and the Fire Departments have not contended that they would so qualify. Thus, to meet the definition of a "dwelling," an RV, camper, fifth wheel, or travel trailer must constitute an "other improvement to real property." The word "other" indicates that the subject "improvement to real property" must be similar to a "building" or "structure."[14]

The tax code defines "real property" as "[l]and and all things thereunto pertaining, all structures, and all things annexed or attached thereto which would pass to a vendee by the conveyance of the land or

---

[14]We note that the Revenue Commissioner does not appear to have challenged the trial court's designation of a "tiny home" as a "dwelling." This is unsurprising given that a "tiny home" is clearly a building used as a residence for human beings.

property." § 40-1-1(13), Ala. Code 1975. It defines "improvements" as "[a]ll buildings, structures, walls, fences, and any other things erected upon or affixed to the land." § 40-1-1(4). Section 6-5-220, Ala. Code 1975, which concerns actions against contractors, architects, and engineers, defines an "improvement on or to real property" as:

> "Anything that is constructed on or to real property, whether on, under, or over land or water, that enhances the value of real property permanently for general uses, including, without limitation, buildings, structures, fixtures, walls, fences, locks, dams, embankments, bulkheads, docks, jetties, drilling and other platforms and rigs, highways, bridges, canals, ditches, waterways, railroads, sewers, pipelines, pole lines, storage tanks, machinery, equipment and other improvements, and any extension, alteration, addition, or portion thereof."

§ 6-5-220(g) (emphasis added).

Regardless of which statutory definition is applied, it is clear that RVs, campers, fifth wheels, and travel trailers would not be considered "improvement[s] to real property" because they are not constructed on or attached to real property such that they permanently become a part of, or add value to, the real property. The most obvious reason for this, as the Revenue Commissioner observes, is that RVs, campers, fifth wheels, and travel trailers are categorized as "motor vehicles" and "trailers" in

Alabama's motor-vehicle and traffic code, Title 32 of the Alabama Code

of 1975:

> "(34) Motor Vehicle. Every vehicle that is self-propelled and every vehicle that is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for electric personal assistive mobility devices and electric bicycles.
>
> "….
>
> "(81) Trailer. Every vehicle with or without motive power, other than a pole trailer, designed for carrying individuals or property and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle."

§ 32-1-1.1, Ala. Code 1975.

Another portion of the Alabama Code that concerns the regulation

of the sale of recreational vehicles defines RVs, campers, fifth wheels, and

travel trailers more specifically:

> "(2) Camping Trailer. A vehicular unit that is mounted on wheels and constructed with collapsible partial side walls that fold for towing by another vehicle and unfold at the campsite to provide temporary living quarters for recreational, camping, or travel use.
>
> "….
>
> "(7) Fifth Wheel Trailer. A vehicular unit, mounted on wheels, designed to provide temporary living quarters for recreational, camping, or travel use and of such size and weight as not to require a special highway movement permit

and designed to be towed by a motorized vehicle that contains a towing mechanism that is mounted above or forward of the tow vehicle's rear axle.

"....

"(11) Motor Home. A motorized, vehicular unit designed to provide temporary living quarters for recreational, camping, or travel use.

"....

"(13) Recreational Vehicle. A motor home, travel trailer, fifth wheel trailer, camping trailer, and truck camper.

"....

"(16) Travel Trailer. A vehicular unit, mounted on wheels, designed to provide temporary living quarters for recreational, camping, or travel use and of such size and weight as not to require a special highway movement permit when towed by a motorized vehicle.

"(17) Truck Camper. A portable unit, constructed to provide temporary living quarters for recreational, travel, or camping use, consisting of a roof, floor, and sides and designed to be loaded onto and unloaded from the back of a pickup truck."

§ 8-21C-2, Ala. Code 1975.

We included the last definition -- the definition a truck camper -- because it readily demonstrates the fallacy of the trial court's interpretation of the Act. If the definition of a "dwelling" depends "not on some arbitrary type or title, but rather on the use or intended use of the

63

structure -- whether or not persons are dwelling therein," as the trial court stated, then there is no reason why a truck camper also would not qualify as a "dwelling" subject to the fire-protection service fee even though it is clearly a truck that has living quarters in the cab area. Under the trial court's interpretation, whether a truck camper would qualify as a "dwelling" simply would depend on whether it "is being used as a place where one or more persons dwell or reside." In short, the trial court's interpretation ignores whether the thing at issue is, in fact, a "building, structure, or other improvement to real property," § 45-48-142.24(a), which would result in some motor vehicles being subject to the fire-protection service fee even though the Act does not specifically include them.

Indeed, the specific inclusion of mobile homes and house trailers as being "dwellings" in § 45-48-142.24(a)(3) indicates that such a specific listing would be necessary for RVs, campers, fifth wheels, and travel trailers to be subject to the fire-protection service fee. Generally, a mobile home is not considered an "improvement to real property," but, under certain circumstances, it is treated as realty for purposes of ad valorem taxation. As the Court of Civil Appeals has explained:

"A manufactured home[15] is unquestionably personal property at the time of its sale. See [Ala. Code 1975,] § 32-20-20(a) (effective January 1, 2010, and requiring a certificate of title for any manufactured home of model year 1990 or later and not more than 20 years old) and former § 32-8-30(b) (effective until January 1, 2010, and requiring a certificate of title for any manufactured home beginning with model year 1990); see also Sharp v. Sharp, 540 So. 2d 1373, 1375 (Ala. 1989) (determining, after applying common-law principles governing whether an item has become a fixture, that a manufactured home owned by a life tenant had not become a fixture to the remainderman's real property), and Ala. Code 1975, § 7-9A-109 (explaining the scope of Article 9A of the Alabama Uniform Commercial Code as encompassing transactions creating a security interest in personal property or fixtures) and § 7-9A-334(e)(4) (providing for the priority of a security interest in a manufactured home that arises in a manufactured-home transaction). Under Alabama law, a certificate of title must be issued as to a manufactured home. § 32-20-20(a); former § 32-8-30(b). Generally, the transfer of ownership of a manufactured home is accomplished through the execution of 'an assignment and warranty of title to the transferee in the space provided therefor on the certificate [of title].' Ala. Code 1975, § 32-20-30(a); former § 32-8-44(a).

"....

"A manufactured home owned by one person but placed on the land of another is subject to the registration requirements of Ala. Code 1975, § 40-12-255, and is not

---

[15]Reading the Act as a whole, the term "mobile home" in § 45-48-142.24(a)(3) refers to "manufactured homes" because § 45-48-142.26(a) states that, "[i]n the case of mobile homes, the fee shall be collected, administered, and enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as the annual registration fee for manufactured homes provided in Section 40-12-255[, Ala. Code 1975]."

subject to ad valorem taxation. However, <u>Alabama law treats a manufactured home placed on property owned by the manufactured-home owner 'as realty' for purposes of ad valorem taxation</u>; under [Ala. Code 1975,] § 40-11-1(b)(15), '[a]ll manufactured homes located on land owned by the manufactured home owners, except those manufactured homes rented or leased for business purposes, other than those manufactured homes in the inventory of a manufactured home dealer or manufacturer,' are subject to ad valorem taxes. Further, <u>§ 40-11-1(c)(2) provides that those manufactured homes subject to ad valorem taxation under subsection (b)(15) 'shall be taxed as realty.' The regulations promulgated by the Department of Revenue explain that such a manufactured home 'shall be subject to assessment for ad valorem tax purposes' and 'shall be considered as [an] improvement[] to realty</u>.' Ala. Admin. Code (Dep't of Rev.), r. 810-4-2-.02(1). Thus, it appears that the real property is assessed for ad valorem taxation purposes as if the manufactured home is an improvement to the real property, like any other structure that might be placed on real property."

<u>Green Tree-AL LLC v. Dominion Res., L.L.C.</u>, 104 So. 3d 177, 180-81 (Ala. Civ. App. 2011) (emphasis added).

Likewise, a house trailer is not constructed on or attached to real property such that it ordinarily would be considered an "improvement to real property." The motor-vehicle and traffic code provides two definitions for a "house trailer," neither of which fits the criteria for an "improvement to real property":

"(26) House Trailer. Either of the following:

"a. A trailer or semitrailer that is designed, constructed, and equipped as a dwelling place, living abode, or sleeping place, either permanently or temporarily, and is equipped for use as a conveyance on streets and highways.

"b. A trailer or semitrailer that has a chassis and exterior shell that is designed and constructed for use as a house trailer, as defined in paragraph a., but which is used instead permanently or temporarily for the advertising, sales, display, or promotion of merchandise or services, or for any other commercial purpose except the transportation of property for hire or the transportation of property for distribution by a private carrier."

§ 32-1-1.1 (emphasis added).

Because mobile homes and house trailers generally are not considered "improvement[s] to real property," § 45-48-142.24(a)(3) specifically lists them as "dwellings" to make it clear that they are subject to the fire-protection service fee. It follows that the same would have to be true for RVs, campers, fifth wheels, and travel trailers because they are not "improvement[s] to real property" but, instead, are generally categorized as recreational vehicles. Because RVs, campers, fifth wheels, and travel trailers are not "building[s], structure[s], or other improvement[s] to real property," and because they are not specifically listed as "dwelling[s]" in § 45-48-142.24, they are not subject to the fire-

protection service fee. The trial court erred in concluding otherwise, and we therefore reverse that portion of the trial court's judgment.

IV. Conclusion

We perceive tension between the Act's declaration that "[t]he fire protection service fee shall not be construed as a tax on property," § 45-48-142.24(c), and its requirement that "[t]he fire protection service fee shall be … enforced as closely as possible at the same time, in the same manner, and under the same requirements and laws as are the ad valorem taxes of the state," § 45-48-142.26(a). However, we decline to decide whether a failure to pay the fire-protection service fee would result in a lien on the subject property that would empower the Revenue Commissioner to place the subject property for sale to satisfy the delinquency because the trial court's November 29, 2023, judgment did not require the Revenue Commissioner to enforce a delinquency in payment under the Act through the sale of a subject property. Consequently, that issue is not ripe for decision.

We agree with the Revenue Commissioner that § 45-48-142.23(b) requires a petition seeking a referendum for approval of a fire-protection service fee in a fire district to contain a legal description of the fire-

district area. However, the Act does not contain a provision for contesting a referendum election that approved a fire-protection service fee for a fire district, but that is essentially what the Revenue Commissioner has attempted to do by challenging the validity of the petitions that approved a fire-protection service fee for the Georgia Mountain and Four-C fire districts. Therefore, the Revenue Commissioner's argument does not constitute a valid ground for reversing the trial court's judgment.

We conclude that the trial court erred by interpreting the term "business" in the Act as including any entity that conducts trade or commerce in Marshall County. Instead, based on the numerous reasons provided in Part III.C of this opinion, we agree with the Revenue Commissioner that the term "business" in the Act is defined as "any building, structure, or other improvement to real property that is used or expected to be used as a business establishment that does not also meet the definition of a dwelling." Therefore, the trial court's judgment is reversed to the extent that it directed the Revenue Commissioner to change his current practice of assessing and collecting of the fire-protection service fee on business buildings and structures in Marshall County.

We also conclude that the trial court erred in interpreting the term "dwelling" in the Act to include RVs, campers, fifth wheels, and travel trailers to the extent that persons dwell or reside therein. For the reasons explained in Part III.D of this opinion, we conclude that RVs, campers, fifth wheels, and travel trailers are not "building[s], structure[s], or other improvement[s] to real property" as the term "dwelling" is defined in § 45-48-142.24, and they also are not specifically listed as "dwelling[s]" in the Act. Therefore, we reverse the trial court's judgment to the extent that it required the Revenue Commissioner to assess and collect a fire-protection service fee from the owners of RVs, campers, fifth wheels, and travel trailers present in Marshall County.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Parker, C.J., and Shaw, Wise, Sellers, and Stewart, JJ., concur.

Bryan, J., concurs in part and concurs in the result, with opinion, which Cook, J., joins.

Mitchell, J., concurs in part and concurs in the result, with opinion.

BRYAN, Justice (concurring in part and concurring in the result).

I concur fully as to Part III.D of the main opinion. I concur in the result as to Parts III.A, B, and C.

Regarding Part III.A, I agree with the main opinion's conclusion that the issue whether Michael Johnson, in his official capacity as the Marshall County Revenue Commissioner ("the revenue commissioner"), may enforce collection of fire-protection service fees by selling property on which a fire-protection service fee is delinquent is not ripe for this Court's review. Because that issue is not ripe for review, I express no opinion as to whether the revenue commissioner may enforce collection of the fire-protection service fee by selling delinquent property. To the extent that the main opinion indicates that the revenue commissioner may not do so, I concur in the result only.

Regarding Part III.B, I am concerned by the main opinion's conclusion that there is no mechanism for contesting the elections that approved the fire-protection service fees and that the sole remedy would be to seek dissolution of the fire districts. In particular, I am concerned that the reasoning in Parker v. Mount Olive Fire & Rescue District, 420 So. 2d 31 (Ala. 1982), overlooks the fact that elections that result in the

imposition of fire-protection service fees, unlike elections of persons to office, directly affect property rights of residents. Because property rights are involved, I believe that property owners within a fire district may contest on due-process grounds the validity of an election creating a fire district and imposing a fire-protection service fee. See Wakefield v. Town of Carbon Hill, 215 Ala. 22, 108 So. 855 (1926) (holding that equity court had jurisdiction to set aside an election affecting property rights even though there were no statutory means of contesting the election).

However, even if the election here were subject to a contest on due-process grounds, I question whether the revenue commissioner is the proper party to contest the election. It seems to me that property owners within the fire district would be better positioned to contest the election because it is their property interest that is at stake. For this reason, I agree with the main opinion's conclusion that the revenue commissioner's attempt to invalidate the fire-protection service fee fails, but not because there is no mechanism for contesting the election.

Regarding Part III.C, I generally agree with the main opinion's conclusion that the term "business" refers to structures rather than business entities. I believe that that interpretation is correct based on

72

the statutory context. However, I do not find the dictionary definitions of the term "business" to be very helpful here because dictionaries define individual words detached from their context. Since a term like "business" has multiple potential meanings, its context is the paramount consideration in determining its meaning.

Cook, J., concurs.

MITCHELL, Justice (concurring in part and concurring in the result).

I concur in the result only as to Parts III.A and B of the majority opinion because, in my view, much of the analysis in those parts is unnecessary to decide this appeal. But I concur fully with Parts III.C and D.

Part III.A addresses whether the Marshall County Revenue Commissioner has the authority to sell delinquent property. I agree with the majority that this question is not ripe for review -- the trial court never ordered the Revenue Commissioner to enforce Act No. 2013-403, Ala. Acts 2013, codified at Ala. Code 1975, § 45-58-142.20 et seq. (Local Laws, Marshall County) ("the Act"), through the sale of delinquent property. In fact, it is not even clear that the Revenue Commissioner raised on appeal his authority to do so. As a result, I do not believe that we should consider whether the Revenue Commissioner has such authority. See Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So. 2d 661, 662 (1963) (holding that Alabama courts are not empowered to decide "moot questions, abstract propositions, or to give advisory opinions, however convenient it might be to have these questions decided

74

for the government of future cases").  Thus, to the extent that Part III.A does so, I take no position.

As for Part III.B, I agree that Parker v. Mount Olive Fire & Rescue District, 420 So. 2d 31 (Ala. 1982), prevents the Revenue Commissioner from contesting the election that approved the fire-protection service fees.  Parker, which is directly applicable to this appeal, prohibits a legal challenge to overturn an election absent express statutory authority.  Id. at 32-33.  And since there is no statute that authorizes a challenge to a referendum held under the Act, Parker shields from judicial review the referendums that established the Four-C Volunteer Fire Department and the Georgia Mountain Volunteer Fire Department.  For that reason, I do not believe that this Court can determine whether the fire departments submitted valid petitions to obtain the referendums.  See also Smith v. Burkhalter, 28 So. 3d 730, 735 (Ala. 2009) (holding that § 17-16-44, Ala. Code 1975, prohibits courts from hearing an election contest unless permitted by statute).  To the extent that Part III.B does so, I likewise take no position.